In the Matter of MORRIS SCHWIND, an Attorney, Respondent.

First Department, November 27, 1931.

*Samuel C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*I. M. Berg* of counsel, for the respondent.

FINCH, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court, First Department, on March 27, 1922.

In the petition herein the respondent is charged with professional misconduct in two instances, as follows:

*First.* On March 16, 1930, one Charles Gold sold his candy store, located at 215 Manhattan avenue, Brooklyn, to one Samuel

Polsky. The respondent represented the purchaser. Two hundred dollars of the purchase price was at the time of the sale left with the respondent to be held by him in escrow to secure the payment of any outstanding indebtedness. The said sum was to be paid over to Gold on April 1, 1930, less any bills that might have come in before that time. There were no outstanding bills, and after April first Gold requested the respondent to turn over to him the $200. The respondent gave Gold his check for $200 postdated April 5, 1930, explaining as his reason for doing so that he was not sure how much money he had in the bank. The check was deposited in the usual course and was returned unpaid for the reason that there were insufficient funds to the credit of the respondent in the bank upon which it was drawn. When the check was returned, Gold called upon the respondent and demanded that he make the same good, but respondent stated that he did not have the money at the time but offered to give Gold a check postdated April 28, 1930, which Gold finally accepted. Gold deposited this check on April twenty-eighth and again on April thirtieth. On both occasions it was returned unpaid for the reason that there were insufficient funds in the account of the respondent. No part of the money was paid by the respondent to Gold until after he had been advised that the matter was in the hands of the Bar Association. In the meantime the respondent converted the said sum of $200 to his own use.

*Second.* In the latter part of November, 1930, Mendel Picket, doing business under the name of Continental Chair and Frame Company, retained the respondent to collect from Electrical Supply Company its check for $125.50, which had been returned by the bank for insufficient funds. It was agreed that the fee of the respondent should be ten per cent of the amount collected if there was no suit, and fifteen per cent if there was a court action. The respondent collected the money on December 2, 1930, converted the same to his own use and failed and refused to pay to Picket his share of the collection until December thirty-first, after charges had been served upon him.

In the answer to the first charge the respondent alleged that Gold came to his office regarding the payment of the $200, whereupon the respondent disclosed to him that the money was intact, and, in effect, requested a loan of the money for a few days, to which Gold consented. The respondent further alleged that he gave Gold the postdated check merely to give Gold some evidence of the debt, and upon his agreement not to deposit the check until he first informed the respondent of his intention so to do in order to enable the respondent to arrange to meet the obligation. The

respondent further alleged that when Gold, after depositing the check in breach of this agreement, came to his office, the respondent reminded him of his promise, and Gold said that not knowing the procedure in these matters, he thought it was safer to deposit the check at once; and further stated that if the respondent had not yet received the moneys he expected, he would take another check dated a week in advance and inform the respondent just before depositing the same, in order to give him an opportunity to put the funds in the bank. The respondent further claimed that notwithstanding this second promise, Gold deposited this check without notifying the respondent, and that the respondent, now realizing that Gold wanted the money and would wait no longer, paid Gold without further delay, the respondent claiming to have had at all these times sufficient funds in his office safe to have paid the amount if demanded.

In answer to the second charge, the respondent alleged that he retained the funds collected pending a dispute over the amount of the compensation of the respondent; that it finally was agreed the respondent should deduct twelve dollars and fifty cents, which his client admitted he was entitled to, and the respondent then informed his client that he would retain the funds until it was determined what was to be done with regard to the balance of his lien for services; that subsequently the client of the respondent pleaded with him to release his claim for the balance of the fee, and stated that if the respondent would do so he would give him more business and make it up in other ways. Whereupon the respondent, wishing to retain his client, wrote him promising to forward the balance.

The testimony submitted by the respondent in support of these defenses but establishes the fact, as has specifically been found by the learned referee, that the defenses have been fabricated to fit the cases, and are wholly false in fact. The learned referee well summed up the evidence when he wrote, with respect to the first charge: " It is my opinion that the testimony of the respondent to which I have thus far referred as his version of what occurred when Gold requested his money is not true. It is born of desperation to extricate himself from his unfortunate predicament and the more he tried to explain the deeper he became involved in inconsistencies." As to the second charge: " In my opinion there is not a shadow of truth in the claim of the respondent that the reason he did not pay Pickett his share of the collection was because the amount of his fee was in dispute, or that he had any agreement, express or implied, that Exhibit 11 did not state the amount of his indebtedness to his client, or did not state the amount

at which his fee was adjusted or that he retained the money because he felt he had a right to do so for his pretended lien."

The respondent has aggravated his offense by his misdirected efforts at justification. The attempt to deceive the court by the giving deliberately of fabricated and false testimony completely demonstrates the unfitness of this respondent to remain a member of the bar. Within seven months of a complaint against him to the grievance committee of the Association of the Bar of the City of New York for the conversion of the money of a client, he committed a second like offense. The case is without any extenuating features.

The respondent must be disbarred.

McAvoy, Martin, O'Malley and Townley, JJ., concur.

Respondent disbarred.